Dear Representative Ansardi:
You have requested an opinion of the Attorney General regarding the applicability of R.S. 38:2251 (Section 2251) to the purchase of computers assembled in Louisiana. You specifically ask whether computers assembled in Louisiana are eligible for the seven percent preference provided under Section 2251(B)(3). In resolving your question, we believe a preliminary discussion of the legislative history of Section 2251 would be beneficial.
Section 2251 was enacted by Act 318 of the 1958 Regular Session of the Louisiana Legislature. Act 318 required purchasing agents of state and local public entities to purchase products produced, grown or manufactured in Louisiana in preference to products produced, grown or manufactured in other states, if the price of the Louisiana products does not exceed those produced in other states by more than three percent.
Act 211 of 1980 increased the preference from three to five percent. Companion Acts 157 and 851 of 1981 retained the five percent preference and specified the requirements for each food product to qualify, including meat and meat products, produce, eggs and seafood harvested in Louisiana waters. The Acts also imposed the same preference for the same food products under the same requirements for purchases made pursuant to R.S. 39:1595
(Section 1595) of the Louisiana Procurement Code. The Code applies, exclusively, to the expenditure of public funds by the Executive Branch of state government, with certain exceptions. Further, pursuant to R.S. 39:1554(E), political subdivisions are authorized to adopt all or any part of the Code, and it's accompanying regulations, for the purchase of supplies, services, major repairs and construction.
Act 778 of 1987 increased the preference from five to seven percent, and further defined the products eligible for said preference. It provides, in pertinent part, the following:
§ 2251. Preference for products produced or manufactured in Louisiana; exceptions
 A. As used in this Section, the following terms shall have the following meanings ascribed to them:
 (1) "Meat" and "meat product" means beef, veal, pork, mutton, poultry, and other meats, and products made from those meats.
 (2) "Other products" includes "other meat", "other meat products", "other seafood", and "other seafood products" and means products which are produced, manufactured, grown, processed, and harvested outside the state.
 (3) "Seafood" and "seafood product" means fish, shrimp, oysters, crabs, underutilized species, and other seafood.
 B. Each procurement officer, purchasing agent, or similar official who procures or purchases products under the provisions of this Chapter shall procure or purchase Louisiana products which are equal in quality to other products, provided the cost of Louisiana products does not exceed the cost of other products by more than seven percent.
 C. In order to qualify as Louisiana products for the purpose of this Section, the following products shall meet the following requirements:
 (1) Produce shall be grown, canned, or frozen in Louisiana.
 (2) Eggs shall be laid in Louisiana.
 (3) Meat and meat products shall be processed in Louisiana from animals which are alive at the time they enter the processing plant.
 (4) Seafood and seafood products shall be produced from seafood which is:
 (a) Harvested in Louisiana seas or other Louisiana waters; or
 (b) Harvested by a person who holds a valid appropriate commercial fishing license issued under R.S. 56:1 et seq.
 (5) Domesticated catfish shall be processed in Louisiana from animals which were grown in Louisiana.
 (6) All other products shall be produced, manufactured, or assembled in Louisiana. (Emphasis added.)
Act 778 also enacted Section 2251(D) and (E) which authorize a four percent preference for pre-processed meats and catfish grown outside of Louisiana, respectively. It further amended Section 1595 to include the same language quoted above, and the four percent exceptions.
Section 2251 was again amended in 1990 by Act 449. This amendment added a definition for "Processed", as it relates to Louisiana produce, and another exception for a four percent preference for produce processed in Louisiana, but grown outside the State. It further implemented this same language in Section 1595. The Act made no change whatsoever in the remaining language contained in Section 2251, as amended by Act 778, quoted hereinabove.
In the case of Ferrara Fire Apparatus v. Morgan City,600 So.2d 1387 (La.App. 1 Cir. 1992) writ denied, the First Circuit addressed the issue of whether the seven percent preference in Section 2251(B) applied to fire trucks assembled in Louisiana. The Court concluded that the statutory language clearly refers to food products. It further held that Paragraph (C)(6), denoting "all other products produced, manufactured or assembled in Louisiana", likewise referenced food products. The language did not, the Court concluded, apply to fire trucks assembled in Louisiana.
During the 1993 Regular Session of the Louisiana Legislature, House Bill 135 (HB 135) was introduced for the specific purpose of amending Section 2251(C)(6), quoted supra, to include "all other types of materials, supplies, equipment, provisions, and products produced, manufactured, or assembled in Louisiana", for applicability of the seven percent preference. The Bill further sought to amend Section 1595(C)(6) for the same purpose. Senate Bill 290 was also introduced to accomplish the same result, but only insofar as Section 2251 was concerned. It became Act 577.
A review of the bill history of HB 135 reveals that it went to Conference Committee and became Act 1032. The Act amended Section 1595(C)(6) to apply the seven percent preference to "all other types of materials, supplies, equipment, provisions, and products produced, manufactured, or assembled in Louisiana". Such was not the case with Section 2251. Both Acts 1032 and 577 amended Section 2251 to include additional definitions. Further, Paragraphs (B) and (C)(6) were amended as follows:
 B. Each procurement officer, purchasing agent, or similar official who procures or purchases products under the provisions of this Chapter shall procure or purchase Louisiana products provided the following conditions are met:
 (1) The bidder shall indicate in the bid submitted that the product has met the criteria of Louisiana product.
 (2) The product is equal or better than equal in quality to the other products.
 (3) The cost of the product shall not exceed the cost of other products by more than seven percent except as otherwise provided in this Chapter as a specific exception.
 C. In addition to the requirements listed in Subsection B of this Section, the following products shall meet the following specific requirements:
 * * *
 (6) Paper and paper products shall be manufactured and converted in Louisiana. (Emphasis added.)
Thus Section 2251(B) and (C) continued to limit the seven percent preference to the food products previously designated, and added "paper and paper products manufactured and converted in Louisiana." With regard to the purchase of materials, supplies and equipment, both Acts added Paragraph (H):
 H. Notwithstanding any other provision of this Section to the contrary, each procurement officer, purchasing agent, or similar official who procures or purchases materials, supplies, or equipment under the provisions of this Chapter may purchase materials, supplies, or equipment which are Louisiana products, as defined in R.S. 38:2251(A)(8), and which are equal in quality to other materials, supplies, or equipment, provided that all of the following conditions are met:
 (1) The cost of the Louisiana products does not exceed the cost of other materials, supplies, or equipment which are manufactured, processed, produced, or assembled outside the state by more than five percent.
 (2) The vendor of Louisiana products agrees to sell the products at the same price as the lowest bid offered on such products.
 (3) In cases where more than one bidder offers Louisiana products which are within five percent of the lowest bid, the bidder offering the lowest bid on Louisiana products is entitled to accept the price of the lowest bid made on such products.
As can be seen from the above, the Legislature created an exception for the preference on the purchase of materials, supplies and equipment. This specific exception is expressly acknowledged in Paragraph (B)(3) with the language "except as otherwise provided in this Chapter as a specific exception". This language clearly refers to Paragraph (H)(1)-(3).
A review of Paragraph (H) reveals that the preference is established at five percent, with the added condition that the Louisiana vendor with the lowest bid must agree to sell the product at the same price as the lowest bid offered by the out-of-state vendor.
Act 1255 of the 1995 Regular Session of the Louisiana Legislature constitutes the last amendment to Section 2251 and amends Paragraph (H) by removing the phrase "Notwithstanding any other provision of this Section to the contrary". Act 1255 does not change the language of Paragraphs (B) and (C) which have heretofor been interpreted by our jurisprudence to limit the seven percent preference to food products and, more recently, paper products. Further, it does not delete the "exception language" contained in Paragraph (B)(3) which clearly applies to the five percent preference for purchases of materials, supplies or equipment.
Given this historical background, we now turn to the following rules of statutory interpretation and construction which we believe are applicable to the issue presented.
 LSA-C.C. Art. 9. Clear and unambiguous law
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
 LSA-C.C. Art. 10. Language susceptible of different meanings
 When the language of the law is susceptible of different meanings, it must be interpreted as having a meaning that best conforms to the purpose of the law.
 LSA-C.C. Art. 12. Ambiguous words
 When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
 R.S. 1 § 3. Words and phrases; how construed
 Words and phrases shall be read with their context and according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
 The word "shall" is mandatory and the word "may" is permissive.
As previously noted, Section 2251(B) and (C) have consistently been interpreted to grant a seven percent preference to food and paper products. In 1993, HB 135 and SB 290 attempted to apply the seven percent preference to all other types of materials, supplies and equipment (e.g., computers). While the Legislature approved this measure for purposes of the State's Procurement Code, it did not approve it for procurements under Section 2251.
Acts 1032 and 577 amended Section 2251 in two respects. First, it established a new five percent conditional preference for Louisiana materials, supplies and equipment, and attached thereto the restrictions in Paragraph (H)(1)-(3). It also expressly
recognized that this five percent preference constitutes an exception to the seven percent preference for food and paper products, as per the "exception language" in Paragraph (B)(3), quoted supra.
Act 1255 of 1995, representing the most recent amendment to Section 2251, does not, in our opinion, change this status quo. Paragraphs (B) and (C) remain completely intact, granting the seven percent preference to food and paper products, while expressly acknowledging the "specific exception" that can only refer to the five percent preference afforded materials, supplies and equipment in Paragraph (H).
Guided by the rules of statutory interpretation and construction noted above, we find the provisions of Section 2251, as amended, to be clear and unambiguous. Assuming, arguendo, the provisions are ambiguous, we are required to examine the text of the law in its entirety. Our jurisprudence has consistently held that, in construing a statute, one is bound to consider all parts together, giving effect to all parts, if possible, and not construing as surplusage any sentence, clause or word, if the construction can be legitimately found which will give meaning to and preserve all words of the statute. Ritchie v. LouisianaDepartment of Public Safety and Corrections, 595 So.2d 1158
(La.App. 1 Cir. 1991) writ denied.
Accordingly, it is the opinion of this office that the purchasing preference for computers is governed by the five percent preference in R.S. 38:2251(H)(1)-(3), and not the seven percent preference granted food and paper products in R.S.38:2251(B)(1)-(3).
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3/sfj